## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **ALBERT L. ROPER, II REVOCABLE TRUST** **individually and on behalf of others similarly situated,** | ) ) ) ) |
| and | ) |
| **CHARLES S. MURRAY REVOCABLE TRUST** | ) ) |
| and | ) ) |
| **THOMAS W. & SALLY ANNE MCNEILAN** | ) ) |
| and | ) ) |
| **T. GRAHAM AND KATHERINE WATSON** | ) ) |
| and | ) ) |
| **THE REAL PROPERTY KNOWN AS THE WEST FREEMASON STREET AREA HISTORIC DISTRICT** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Case No.: 2:21-cv-596** ) |
| **CITY OF NORFOLK** a municipal corporation **SERVE:** City of Norfolk Attorney's Office 810 Union Street, Suite 900 Norfolk, Virginia 23510 | ) ) ) ) ) ) |
| and | ) ) |
| **RICHARD FORTNER** | ) ) |
| and | ) ) |
| **BERNARD PISHKO** **SERVE:** City of Norfolk Attorney's Office 810 Union Street, Suite 900 Norfolk, Virginia 23510 | ) ) ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

The Putative Class Plaintiff, Albert L. Roper, II Revocable Trust, by counsel, moves this Court for damages caused by the City's taking and damaging of private property rights without providing the due process of law or just compensation.  Putative Class Plaintiff and similarly situated individuals are the owners of the dominant tracts to a negative easement over the Grandy House and beneficiaries of protective covenants for historic preservation of the Grandy House. By conspiring to extinguish the easement without any actual justification of emergency or meaningful notice to the Putative Class Plaintiffs, Defendants damaged Putative Class Plaintiffs.

### Nature of Action and Jurisdiction

1.      42 U.S.C. § 1983 provides a vehicle for citizens to bring suit in federal court when state action deprives them of rights guaranteed by the federal Constitution.  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

2.      Both Federal and State law recognize a landowner's right to institute inverse condemnation proceedings when a government entity with the power of eminent domain takes or damages private property for a public use without paying just compensation to the owner.  *E.g. First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316 (1987); *AGCS Marine Insurance Co. v. Arlington County*, 293 Va. 469, 477 (2017); *Livingston v. County of Fairfax,* 284 Va. 140, 145-46 (2010).  A landowner's right to compensation arises from the self-executing nature of the Fifth Amendment to the United States Constitution under federal law, and that of Article I, § 11 of the Constitution of Virginia under state law.  *First English*, 482 U.S. at 315; *Kitchen v. City of Newport News*, 275 Va. 378, 392 (2008).

3.      Inverse condemnation actions are based on a theory of implied contract, where a property owner may waive his or her tort claims and sue for breach of the implied contract

between the citizen and the government to provide just compensation when taking or damaging property for a public use. *E.g. ACGS Marine Insurance Co.*, 293 Va. at 477, 491; *Burns v. Bd. of Supervisors of Fairfax Cnty.*, 218 Va. 625, 627 (1977) ("The owner whose property is taken or damaged for public use has a right to waive all other remedies and to sue upon an implied contract that he will be paid therefor such amount as would have been awarded if the property had been condemned under the eminent domain statute.").

4.      Property rights have long been conceptually recognized as a "bundle of sticks," *United States v. Craft*, 535 U.S. 274, 278 (2002) ("A common idiom describes property as a 'bundle of sticks' – a collection of individual rights") (citations omitted), which include such rights as the right to possess, use, dispose of, and exclude others from. *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 82, 82 n.6 (1980).

5.      The Takings Clause of the Fifth Amendment "is addressed to every sort of interest the citizen may possess." *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

6.      This case is a civil action under 42 U.S.C. § 1983 as well as under Article I, § 11 of the Virginia Constitution and Va. Code § 8.01-187 asserting a violation of the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment in which Putative Class Plaintiff seeks damages and/or just compensation for the extinguishment of a negative easement that the he and the putative class held over the servient tract at issue in this proceeding – the subject property known as 355 West Freemason Street ("Grandy House"). The

destruction and extinguishment of the negative easement causes damage to the Putative Class Plaintiffs' property rights – their respective investments in a historic preservation district.

7.       A citizen whose property has been taken without just compensation in violation of the Takings Clause of the Fifth Amendment may immediately bring suit in federal court under 42 U.S.C. § 1983.  *Knick v. Township of Scott*, 139 S. Ct. 2162, 2177 (2019).

8.       Plaintiff had a negative easement over the Grandy House which the Defendants extinguished by their actions taken without notice to Plaintiff.  By demolishing the Grandy House, without notice of the alleged building code violation to the Plaintiff, the Defendants defeated and extinguished the historic covenants requiring preservation of the Grandy House. Plaintiff and the class had an enforceable negative easement meant to protect the Grandy House from demolition without certain process – process denied to the Plaintiff and the class by design.

9.       The taking and extinguishment of the Plaintiff's and the class's negative easement, part of their bundle of rights totaling their property rights, the Defendants damaged the remainder of the Putative Class Plaintiffs' bundle of sticks of remaining property rights.

10.       Restrictive covenants and negative easements constitute valuable property rights. *Chappell v. N.C. DOT*, 374 N.C. 273, 284 (2020) (holding that legislative act imposed a negative easement on private property); *United States v. Blackman*, 270 Va. 68, 80 (2005) ("easements in gross, whether affirmative or negative, [are] interests in real property"); *Forster v. Hall*, 265 Va. 293, 300 (2003) (holding that a reciprocal negative easement was an equitable right arising by implication which members of community could enforce); *Bennett v. Charles Corp.*, 159 W. Va. 705, 710, 715 (1976) ("When the effect of the restriction sought is to preclude an owner of land from doing something he otherwise would be entitled to do, it is considered a negative easement. Negative restrictive easements are basically restrictive covenants which are equitably

enforceable. . . .  An easement, whether affirmative or negative, is an incorporeal hereditament and as such is a species of real property or land subject to the provisions of the statutes governing the conveyance or creation of estates in land. . . . Such easements arise upon the separation of a tract of land into dominant and servient estates." (internal citations and quotation marks omitted));   *Minner v. Lynchburg*, 204 Va. 180, 183 (1963) (finding property interests in implied covenant enforceable against the City which had actual and constructive notice of the scheme even though nothing in individual deeds referenced the covenant); *Hercules Powder Co. v. Continental Can Co.*, 196 Va. 935, 947 (1955) ("When Continental Can acquired the property from Hummel-Ross, it also acquired the benefit of the restriction, which was, by whatever name called, a valuable equitable right in property."); *Meagher v. Appalachian Electric Power Co.*, 195 Va. 138, 145 (1953) ("Our previous decisions have clearly indicated that restrictive covenants create a valuable right in property."); *Riverbend at Cascades Condominium Unit Owners Assoc. v. Cascades Community Assoc.*, Chancery No. 24262, 2005 Va. Cir. LEXIS, *7 (Loudoun Cnty. Apr. 12, 2005) ("Restrictive covenants create a valuable property right."); *NBS Loudoun Gateway IV, L.L.C. v. Commonwealth Transportation Commissioner*, 63 Va. Cir. 342, 344 (Loudoun Cnty. 2003) ("a restrictive covenant is a right in property and constitutes an interest in land."); 6B Michie's Jurisprudence Easements § 2 ("Negative restrictive easements are basically restrictive covenants which are equitably enforceable.  An easement, whether affirmative or negative, is an incorporeal hereditament, and as such is a species of real property or land, subject to the provisions of the statutes governing the conveyance or creation of estates in land."); *see also Prospect Dev. Co. v. Bershader*, 258 Va. 75, 89 (1999) ("The easement owner has, under such an easement, the power to prevent the servient owner from doing, on his premises, acts which, but for the easement, the servient owner would be privileged to do. . . .

Thus, a negative easement does not bestow upon the owner of the dominant tract the right to travel physically upon the servient estate, but rather requires that the owner of the servient estate refrain from undertaking certain activities on the servient estate which the owner would otherwise be entitled to perform." (internal citations and quotation marks omitted)).

11.  The City of Norfolk did not timely notify Plaintiff or the class of the Notice of Violations it caused to register against the Grandy House and the Plaintiffs' negative easements.

12.  The City of Norfolk did not follow state or local law in deciding to invoke an emergency exception to demolish Grandy House.  The report relied on by the City conceded that demolition is not required by an emergency rather recommended on the basis of feasibility. Existing state and local law required feasibility decisions to be made by a review board with an appeal to City Council by members of the historic district who cared to contest the decision.

13.  The City of Norfolk acted with disregard to Putative Class Plaintiffs' status as beneficiaries of historic covenants and a negative easement in the Grandy House, destroying their private property rights in a negative easement to object to demolition of the building.

14.  City officials acted arbitrarily, capriciously, and against the substantial weight of the evidence before them in deciding to destroy a structure that posed no threat to public safety and denied Plaintiffs the opportunity to challenge their actions in an administrative appeal.

15.  This Court has jurisdiction of this matter under 28 U.S.C. § 1331 because the action is being brought under the laws of the United States.

16.  The property and the actions complained of in this Petition lie in the City of Norfolk, which is within the Norfolk Division of the Eastern District of Virginia, and venue is proper before this Court.

17.     Putative Class Plaintiffs stand as aggrieved parties by virtue of their property rights to object to use of the Grandy House for anything other than historical preservation.

## CLASS REPRESENTATIONS

18.     The Putative Class Plaintiff bring this class action on behalf of itself and all owners of real property interests within the West Freemason Street Area Historic District on the date of Granby House's destruction, for the purpose of asserting the violation of due process rights and the taking of valuable private property interests.

19.     A class action is a superior means, and the only practicable means, by which Putative Class Plaintiff and unknown class members can challenge the City's and City officials' unconstitutional Due Process violations and taking of property without just compensation.

20.     This action is brought and may be properly maintained as a class action pursuant to Rule 23(a), Rule 23(b)(1), and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

21.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

22.     The class is so numerous that joinder of all members is impracticable.  While the exact number of class members is unknown to Putative Class Plaintiff at this time, he believes that the number of affected property owners exceeds one hundred and seventeen.

23.     Putative Class Plaintiff's claims are typical of the claims of the class because he and all class members sustained a violation of Due Process by the City's failure to follow procedure and the arbitrary and capricious actions of named Defendants, and they all suffered a taking of valuable negative easement rights over Granby House.

24.     Putative Class Plaintiff would be an adequate representative of the class.  Putative Class Plaintiff will fully and adequately protect the interests of the class members.  He has

retained counsel who is experienced and competent in condemnation and inverse condemnation litigation.  He has no interests that are contrary to or in conflict with those of the class he seeks to represent.

25.     A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy.  Putative Class Plaintiff knows of no difficulty that would preclude its maintenance as a class action.

26.     The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for the City and its officials under the laws alleged herein. Additionally, adjudications with respect to individual class members could be dispositive of the interests of others members not party to the individual actions or could substantially impair their ability to protect their interests.  The source of the property rights taken by the City is the same for all putative class members – the negative easement over Granby House arising from ownership of property in the area, and the adjudication of one person's rights should be the same as all – bringing this action across multiple plaintiffs could result in one person in the district having negative easement rights but the next not.  Further, the Due Process violation for all Plaintiffs stems from the same action and inaction by the City and named Defendants, and multiple litigation could result in finding that the same series of actions violated Due Process for some and not others.

27.     Further, questions of law and fact common to the class predominate over any questions which may affect only individual members in that the easement rights in question are common to the class and the same series of actions constituting a Due Process violation affected the class the same.  Among the common questions of law and fact are:

     a.   Whether the City's action constituted a violation of procedural due process;

     b.   Whether the state and local law encumbered the Grandy House by negative easements and protective covenants for historic preservation to the benefit of the Putative Class Plaintiffs;

     c.   Whether the City's destruction of Granby House effected a taking and damaging of those easement rights.

28. The only issues in this matter that are not common are the amounts of just compensation due each class member upon finding of a taking.

## PARTIES

29.    Putative Class Plaintiffs own real property in the Historic Freemason District of the City of Norfolk and represent the *in rem* interests of real property taken and damaged.

30.    The City of Norfolk is a municipal corporation armed with police power to control zoning within its borders and authorized by the Commonwealth of Virginia to use the power of eminent domain to take and damage private property for public uses.

31.    Richard Fortner served as Building Commissioner of the City of Norfolk and the City's Uniform Statewide Building Code Official at all times relevant relating to this Complaint.

32.    Bernard Pishko served as the City Attorney for the City of Norfolk at all times relevant relating to this Complaint.

## FACTUAL ALLEGATIONS

33.    C.W. Grandy built the structure which sat at 355 W. Freemason Street in or about 1901 ("Grandy House").  Historic photograph attached as Exhibit A.

34.    The Grandy House featured residential and office uses since 1901.

35.     On or about December 21, 1971, the Commonwealth of Virginia added the West Freemason Street Area Preservation Zone to the Virginia Landmarks Register.

36.     On November 7, 1972, the United States Department of the Interior added the West Freemason Street Area Preservation Zone to the National Register of Historic Places.

37.     In 1973, the Commonwealth of Virginia enacted legislation empowering localities to designate and preserve historical districts.  Va. Code § 15.1-503.2 (1973).

38.     Norfolk designated the West Freemason Street Area Historic District in 1977.

39.     In the 1970s, Dr. Al Roper purchased 351 Botetourt Street and made significant investment restoring and preserving that property - the Selden House.

40.     On December 13, 2002, the Charles S. Murray Revocable Trust purchased 408 West Bute Street for $625,000 and made more investments to preserve the property.

41.     On December 10, 2007, Tom and Sally McNeilan purchased 408 West Bute Street for $820,000 and made additional investment to restore and preserve it.

42.     On May 10, 2017, Graham and Katherine Watson purchased 352 West Freemason Street for $889,000 and made more investments to preserve the property.

43.     At all times relevant, demolition of a structure in the historic district required a certificate of appropriateness from the City's Architectural Review Board.

44.     At all times relevant, demolition of a structure in the historic district required a feasibility analysis to allow the ARB to determine if preservation was possible.

45.     At all times relevant, other owners of property in the historic district could appeal an adverse decision of an ARB action to City Council and then to Circuit Court.

46.     At all times relevant, demolition of a structure in the historic district was allowed in case of an emergency by order of the Fire Marshal or Building Commissioner.

47.     In November of 2015, Dr. Mark S. Sinesi purchased the Grandy House.  Deed of Bargain and Sale recorded as Instrument No. 150024719 attached as Exhibit B.

48.     In 2016, the City's Architectural Review Board ("ARB") approved plans to renovate the Grandy House and issued a Certificate of Appropriateness.  Portions of plans and photographs included in application attached collectively as Exhibit C.

49.     Pursuant to the statutory scheme enacted by the City of Norfolk to fulfill the enabling statute passed by the Commonwealth of Virginia in Va. Code § 15.2-2306, all changes to the exterior, visible from the public right-of-way, to properties in historic preservation districts must make formal application to the City ARB.  This includes applications for demolition.

50.     On December 16, 2016, an arsonist set fire to the Grandy House.

51.     After putting out the fire, the fire marshal did not declare the Grandy House a threat to public safety or an imminent danger requiring an emergency demolition.

52.     The fire marshal and the building commissioner are the two people empowered by the Zoning Ordinance to order emergency demolition of a historic structure.  This is in contrast to the otherwise-required ARB process based on feasibility and with an appeal to City Council.

53.     On December 19, 2016, the City cited the owner for code violations including, among others, the need for immediate demolition or repair of the porch.

54.     Over the next year and a half, the Freemason Street Area Association ("FSAA") made multiple complaints to the City that the owner was not keeping the Grandy House secured or protected from weather.  The City initiated actions against the owner of the Grandy House for building code violations and parallel violations of the City zoning ordinance at FSAA's request.

55.     Over the next year and a half, the City failed to exert its powers to require demolition of the porch structure, or any other portion, of the Grandy House.

56.     Over the next year and a half, the City failed to exert its power to require the repairs to the porch structure of the Grandy House cited on December 19, 2016.

57.     Despite multiple requests from the FSAA, the City never enforced the code repairs required of the back porch through judicial action.  The City never enforced the cited code violations through judicial action.  The City agreed to continuances to postpone hearings on enforcement set November 3, 2017, January 5, 2018, February 9, 2018, May 18, 2018, June 1, 2018, and September 7, 2018.  E-mail example of continuance request attached as Exhibit D.

58.     The City's failure to require the owner to repair the Grandy House caused further deterioration of the Grandy House.   The City knew that failures to repair the Grandy House caused further deterioration of the Grandy House.  Despite knowledge that demolition of the Grandy House could cause damage to Plaintiffs and their class, the City acted with deliberate indifference to the Plaintiffs' interests.

59.     The owner of 355 West Freemason Street could not demolish the Grandy House by-right.  The owner never made formal application the ARB for approval to demolish the Grandy House.  Instead, the owner asked the City attorney's office to demolish the Grandy House using the City's emergency powers pursuant to the building code.  The City agreed.

60.     Demolishing the Grandy House would increase the value of the owner's investment.  *Cf.* Ex. B, deed of sale, improved with the Grandy House, in the amount of $675,000.00 to a listing to sell the land vacant for $899,000.00 attached as Exhibit E.

61.     The City failed to train its employees for the obvious moral hazard of an owner wishing to demolish a building, subject to a protective covenant for the benefit of the historic district, to sell the land unencumbered for profit caused damage to Putative Plaintiffs Class as beneficiaries of the protective covenant and owners of the dominant tract to a negative easement.

62.     On June 15, 2018, counsel for the property owner asked the City attorney's office for permission to demolish the Grandy House, attaching a letter from the owner's engineer from January 2018.  Email chain starting June 15, 2018, attached as Exhibit F.

63.     On June 18, 2018, the City's building commissioner sent an email stating that the Grandy House "is structurally unsafe and should be demolished."  Ex. F, p. 3.

64.     This response, sent from Mr. Fortner's iPhone without a personal inspection of the subject property, reflects the City's custom and policy to demolish buildings without actual emergencies.  The June 2018 "emergency" was based on a January 2018 letter.

65.     On June 19, 2018, the City's director of planning explained the different approaches to obtaining permission to demolish a building in a historic district, fearing that reliance on the January 2018 letter, to authorize a June 2018 demolition, would not pass strict scrutiny with the "immediately unsafe" emergency standard.  Ex. F, p. 2-3.

66.     This reply, from the director of planning to the building commissioner, shows a failure to train the building commissioner on his duties in a situation sure to recur for the building commissioner, as he is one of two people allowed to order an emergency demolition of historic property pursuant to the City's Zoning Ordinance.

67.     Later that same day, June 19, 2018, the City's director of planning wrote the City attorney's office and advised that the engineering letter required more detail and "[i]t may just be easier to go through the [ARB] process." Ex. F, p. 2.

68.     This reply, from the director of planning to the City attorney's office, shows a lack of training or deficient training for the City attorneys as to the standard and requirements for demolition in a historic district – a recurring situation sure to occur.

69.     On July 23, 2018, the City attorney's office requested clarity as to whether or not demolition was the only option for the Grandy House.  Ex. F, p. 1.

70.     This reply, from the City Attorney to the planning commissioner, shows a lack of training or deficient training for the City Attorney as to the requirements for demolition in a historic district – a recurring situation sure to occur over time.

71.     On August 2, 2018, the FSAA historic oversight committee met with a developer planning to restore the Grandy House and develop the adjacent lot.  Email chain regarding Andy McCullough site visit starting July 26, 2018, attached as Exhibit G.

72.     On August 9, 2018, the FSAA historic oversight committee reached an agreement to support Mr. McCullough's plan to restore the Grandy House.  Email from Adm. Jack Kavanaugh (Ret.), seconding Mr. Steve Sigmon's proposal attached as Exhibit H.

73.     The City, at the owner's request, did invoke its emergency powers to demolish the Grandy House by memorandum of the City building commissioner.

74.     On August 9, 2018, the City building commissioner issued a memorandum declaring the Grandy House "in such a condition that could reasonably be expected to cause death or serious physical harm to the public."  Memo attached as Exhibit I.

75.     The building commissioner knew that there was no real or actual emergency to the public.  Never in the year and half between the fire and the memorandum did the City require repairs or close the sidewalk.  Mr, Fortner expanded his iPhone email decision into a formal memorandum for posterity in concealing his unlawful decision.  This single decision by a final policymaker damaged Plaintiffs as beneficiaries of the protective covenant and negative easement for preservation of the Grandy House.

76.     On August 13, 2018, the City zoning administrator issued a memorandum advising, among others, the Architectural Review Board of the building commissioner's memo dated August 9, 2018, authorizing emergency demolition of the Grandy House. Memorandum dated August 13, 2018, attached as Exhibit J.

77.     Neither memo provides notice of any opportunity, or procedure, to appeal the decision of the building commissioner. *See* Ex. I and J.

78.     Greta Gustavson, FSAA representative to the ARB, asked the building commissioner to re-consider his decision. Mr. Fortner refused to re-consider his decision and did not make any mention of any process or procedure available to appeal his decision.

79.     The building commissioner acted with deliberate indifference and gross negligence as to the need to notify Putative Class Plaintiff or any class member of the appeal procedures causing a deprivation of the benefits of the covenant for historic preservation of the Grandy House.

80.     On August 14, 2018, unbeknownst to Putative Class Plaintiff and the rest of the class, the City sent the owner a notice of violation letter that required an appeal within fourteen (14) days to challenge the decision. Notice of violation letter attached as Exhibit K.

81.     The City admits it gave no notice of the procedures to appeal the demolition order to anyone except the owner of the Grandy House, Dr. Sinesi, as shown below:

1.     Admit the City gave no written notice of any appeal procedures to challenge the Notice of Violation dated August 14, 2018, to anyone except Dr. Mark Sinesi.

ANSWER: Admitted.

82.     The City sent no other notices to any other person.

83.     The City did not serve Putative Class Plaintiff, any class member, or the FSAA's registered agent.

84.     The City did not notice Putative Class Plaintiff, any class member, or the FSAA by publication.

85.     The City failed to notice all parties aggrieved by the notice of violation.

86.     The City failed to follow the Uniform Statewide Building Code in notifying aggrieved parties.

87.     City policy is to not follow the Uniform Statewide Building Code in notifying aggrieved parties.

88.     The City failed to train its employees as to the required notices of appeal procedures to challenge demolition of buildings in historic districts encumbered with negative easements benefitting additional aggrieved parties, an obvious recurring possibility in historic districts.

89.     City policy not to notify all aggrieved parties caused a deprivation of Putative Class Plaintiff's and all class members' benefits from the covenant protecting the Grandy House for historic preservation.

90.     City custom and practice not to notify Putative Class Plaintiff or any class member, after they demonstrated an interest in the upkeep of the property, of procedures to appeal notice of violation shows deliberate indifference and reckless disregard of their interests in the Grandy House and the protective covenant for historical preservation benefitting their member properties.

91.     On August 16, 2018, the FSAA historic oversight committee learned that the City authorized demolition of the Grandy House.  Email attached as Exhibit L.

92.     Greta Gustavson, on behalf of the FSAA, phoned Mr. Rick Fortner, building commissioner, asking him to reconsider his decision to demolish the Grandy House.  Mr. Fortner refused and withheld the fact that aggrieved parties could appeal his decision to the Local Board of Building Code Appeals.  Defendants never advised the Putative Class Plaintiff or any class member that aggrieved parties had a right of appeal to the Local Board of Building Code Appeals.  Defendants never provided a copy of the Notice of Violation.

93.     Ms. Gustavson relayed her understanding that there was no saving the property even if a contractor was interested in purchase.  Email attached as Exhibit M.

94.     On August 24, 2018, Mr. Sigmon of the FSAA historic oversight committee made a motion for action on the Grandy House.  Email attached as Exhibit N.

95.     On August 28, 2018, the FSAA historic oversight committee, at its regular meeting, resolved to take action with regards to the Grandy House.

96.     On August 30, 2018, the FSAA filed an emergency temporary injunction.

97.     On August 31, 2018, the Court granted an *ex parte* emergency injunction.

98.     On September 8, 2018, in an interview with WAVY-TV 10, Dr. Sinesi admitted it was a matter of feasibility not emergency.  ("It would be very costly to restore the building.  It was well over a million dollars before the fire.  It would not be possible for me or anyone else to restore it.").  Dr. Sinesi never exposed the property to the ARB process to adjudicate feasibility.

99.     On September 19, 2018, at the temporary injunction trial, the City appeared to argue that FSAA's injunction was time-barred for failure to appeal the notice of violation.  This was the first notice to Putative Class Plaintiff, the FSAA, or any class members of the existence of the notice of violation and its underlying appeal process to a local building code review board.

100.     On September 19, 2018, the Norfolk Circuit Court heard evidence from both parties including thirteen (13) witnesses.  All of the witnesses qualified as experts agreed the Grandy House was not in danger of imminent collapse.  Transcript of Proceedings in CL18-7735 from September 19, 2018, before Hon. Lannetti incorporated by reference.

101.     Paige Pollard, qualified as an expert in historic preservation, testified that the situation did not meet the legislative intent for the emergency exemption.

102.     Andy McCullough, qualified as an expert in historic rehabilitation, testified that he had no qualms purchasing the property for development of the structure based on his experience and inspection of the interior.  He expressed surprise that the structure had qualified for demolition and indicated he never imagined it would qualify.

103.     Deborah Cacace, P.E., qualified as an engineer, testified that the Speight, Marshall & Francis, P.C., report did not stand for the conclusion that the building must come down as an imminent threat to public health and safety.

104.     Stephen Cowan, P.E., qualified as a structural engineer, testified that he did not think that the structure caused an imminent threat to public safety.

105.     The City employees testified they performed ministerial acts to demolish the Grandy House as a solution to remedy code enforcement violations.

106.     Rick Fortner testified that he had not inspected the property.

107.     Sherry Johnson testified that she did not care whether the building stood or fell, so long as the enforcement issues dogging her office were resolved.

108.     The court found that property owners in the district had a direct interest in the Grandy House:

has suffered is in common with other persons similarly situated. The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals*, 231 Va. 415, 419–20 (citation omitted) (quoting *Nicholas v. Lawrence*, 161 Va. 589, 593, 171 S.E. 673, 674 (1933)).

Here, the demolition of Grandy House would have a direct impact—both cultural and financial—on the other property owners within the Historic District and on Freemason itself. Hence, Freemason has a direct interest in the subject matter of this proceeding, and this interest is different from that suffered by the non-Historic District public generally. The Court therefore finds that Freemason is a "person aggrieved" under the USBC.

109.    The court found that there was not an emergency, as show below:

recommendations contained in the Report as well as his own professional experience. The Court notes that the Report does not expressly opine that immediate takedown of the building is necessary. Rather, it concludes that "the best and most reasonable course of action for this structure is complete demolition." The Report does, however, recommend immediate demolition of the partially collapsed porch structure "to prevent a potential hazard to the public." It also

110.    The court declined to impose a temporary injunction on the basis that the FSAA

may have failed to exhaust its administrative remedies, as shown below:

provides that "[f]ailure to submit an application for appeal within the time limit established by this section shall constitute acceptance of a code official's decision." *Id.* Hence, based on the evidence presented thus far, it appears that Freemason may have failed to exhaust its administrative remedies before resorting to judicial intervention.

Based on the facts as currently known, the Court finds that Freemason failed to clearly demonstrate that it likely will succeed on its Petition for Declaratory Judgment at trial.

111.    The City's failure to provide reasonable notice of an opportunity to be heard is the

proximate cause for irreparable harm to Putative Class Plaintiffs and all other class members.

112.    Putative Class Plaintiff with other class members asked the City Mayor to

intervene after failing to preserve the Grandy House with an injunction.  Class members met with

the Mayor on October 23, 2018.

113.    On October 23, 2018, the City Attorney informed class members that the City would welcome FSAA's appeal of the notice of violation and waive any reliance on the fourteen (14) day appeal period, allowing the Grandy House to stand in the interim.  Email from Bernard Pishko dated October 23, 2018, attached as Exhibit O.

114.    On October 24, 2018, FSAA filed an appeal of the notice of violation.

115.    On October 24, 2018, the City Attorney wrote class members and reneged on the City's decision from the day prior.  Email from Bernard Pishko attached as Exhibit P.

116.    The City Attorney's single decision constituted City policy on the issue of giving Putative Class Plaintiff and the class members a reasonable opportunity to be heard while the Grandy House remained.

117.    The City Attorney possessed final authority to establish City policy with respect to giving Putative Class Plaintiff and the class a reasonable opportunity to preserve the Grandy House.

118.    The City Attorney acted with reckless disregard and indifference or gross negligence to Putative Class Plaintiff's right to a reasonable opportunity to be heard and that of each individual class member.

119.    The City adopted the City Attorney's authorized decision on the course of action to deny Putative Class Plaintiff and all class members an administrative appeal while the Grandy House remains standing.

120.    The City acted with deliberate indifference and reckless disregard of each class member's property rights in preservation use of Grandy House and right to be heard on those rights.

121.    The City failed to train the City attorney's office with regards to the local building code appeals process, evidenced in the emails attached collectively as Exhibit Q.

122.    The City issued a demolition permit for the Grandy House and the owner demolished the Grandy House.  Photograph of demolition in progress attached as Exhibit R. Issuance of a demolition permit constituted state action that caused harm to Putative Class Plaintiff and the class.

123.    The City Attorney's sole decision to deny an administrative appeal hearing before demolition made City policy.  Email from City Attorney attached as Exhibit S.

124.    Putative Class Plaintiff and every other property owner in the historic district benefitted from a protective covenant for and dominant easements over the historic Grandy House – a world-class structure of its era.  By licensing its powers to terminate that covenant, the City caused irreparable harm and damage to the class.

125.    The City's habitual demolition of historic properties for redevelopment, dating back to the 1960s, reflects permanent practice of the City as its custom and usage.

126.    The City's Housing Authority operated the practice with such custom, use, and abuse that the General Assembly restricted its power of eminent domain in 2010.  *PKO Ventures LLC v. Norfolk Redevelopment & Housing Auth.*, 286 Va. 174 (2013).

## COUNT ONE (violation of procedural due process against City)

127.    Putative Class Plaintiff incorporates the allegations in paragraphs 1 through 126 as if restated fully herein.

128.    Putative Class Plaintiff and all class members had a cognizable property interest in the demolished building by virtue of state and local laws recognizing a negative easement over

the Grandy House for their benefit including covenants allowing meaningful objection and appeal of decisions to demolish the Grandy House.

129.    The City deprived Putative Class Plaintiff and fellow class members of that property interest by state action.

130.    The City procedures employed were inadequate to safeguard that interest.

131.    The City invoked an emergency exception in order to sidestep the procedural safeguards required by state law for historic districts with knowledge of facts suggesting no emergency existed.

132.    The City intentionally misconstrued language about the potential collapse of Grandy House's porch to mean the entire structure was at risk of collapse.

133.    The City did not give Putative Class Plaintiff, the FSAA, or any class members reasonable notice of an opportunity to be heard before demolishing the building and eliminating the protective covenant on the building for their benefit.

134.    The City did not give  notice by private process server.

135.    The City did not publish notice in a newspaper of general circulation.

136.    The City's failure to provide notice to any class member deprived them the opportunity to appeal its decisions though proper administrative channels.

137.    The City denied Putative Class Plaintiff and the class the ability to challenge its arbitrary and capricious decisions that led to the demolition of Grandy House and the destruction of their property right therein.

138.    The City's procedures pose great risk of an erroneous deprivation of a valuable private property interest.

139.     Additional procedural safeguards, such as personal service or notice by publication, offer significant value to avoiding erroneous deprivation.

140.     The administrative burden of additional procedural safeguards, such as personal service or notice by publication, are slight and nominal in cost.

141.     The City did not give Putative Class Plaintiff or the class adequate notice of a right to an opportunity to be heard.

## COUNT TWO (federal inverse condemnation against City)

142.     Putative Class Plaintiff incorporates paragraphs 1-141 by reference.

143.     An inverse condemnation claim has four elements: (1) private property interest, (2) that interest is taken or damaged by a government entity with condemnation authority, (3) the taking or damaging was for public use, and (4) the government failed to pay just compensation. *Kitchen*, 275 Va. at 386; *Close v. City of Norfolk*, 82 Va. Cir. 636, 640 (Norfolk 2009).

144.     Putative Class Plaintiff, along with each and every member of the class,  was the beneficiary of a protective easement over Grandy House, which the Commonwealth of Virginia recognizes as a valuable property right.  *See Blackman*, 270 Va. at 80 ("easements in gross, whether affirmative or negative, [are] interests in real property capable of being transferred by deed or will."); *Forster*, 265 Va. at 300 (holding that a reciprocal negative easement was an equitable right arising by implication which members of community could enforce); *Minner*, 204 Va. at 183 (finding property interests in implied covenant enforceable against the City which had actual and constructive notice of the scheme even though nothing in individual deeds referenced the covenant); *Hercules Powder Co.*, 196 Va. at 947 ("When Continental Can acquired the property from Hummel-Ross, it also acquired the benefit of the restriction, which was, by whatever name called, a valuable equitable right in property.");  *Meagher*, 195 Va. at 145 ("Our

previous decisions have clearly indicated that restrictive covenants create a valuable right in property."); *Riverbend at Cascades*, 2005 Va. Cir. LEXIS at *7 ("Restrictive covenants create a valuable property right."); *NBS Loudoun Gateway IV*, 63 Va. Cir. 342 at 344 ("a restrictive covenant is a right in property and constitutes an interest in land."); *see also Chappell*, 374 N.C. at 284 (holding that where Map Act imposed an "indefinite restraint on fundamental property rights" restricting the owners' rights to "improve, develop, and subdivide," the Map Act imposed a negative easement for which compensation was owed).

145.    By destroying Grandy House, the City also took the restrictive covenant over the property owned by every class member which is a compensable property interest.  *See Meagher*, 195 Va. at 146 ("We are of opinion, then, that the acts of the [condemnor] are a breach of the covenants and restrictions binding . . . and constitute a taking or damaging of property rights for which compensation must be paid."); *see also Chappell*, 374 N.C. at 284 (holding that where Map Act imposed an "indefinite restraint on fundamental property rights" restricting the owners' rights to "improve, develop, and subdivide," the Map Act imposed a negative easement for which compensation was owed); *Riverbend at Cascades*, 2005 Va. Cir. LEXIS at *7 ("Restrictive covenants create a valuable property right.").

146.    The City asserts that it destroyed Grandy House for the public purpose of preventing injury to passersby and eliminating blight.  Upon information and belief, the City destroyed the Grandy House for an improper public purpose of increasing the tax base.

147.    The City did not condemn this property right in formal proceedings or pay just compensation to the Putative Class Plaintiff or any of class members.

148.    The Court should impanel a jury to decide that the City has taken the valuable negative easement rights owned by each and every property owner in the historic district without

just compensation and damaged property not taken.  *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 722 ("As is often true in § 1983 actions, the disputed questions were whether the government had denied a constitutional right in acting outside the bounds of its authority, and, if so, the extent of any resulting damages. These were questions for the jury."); *Livingston*, 284 Va. at 157 ("But it is for a jury — not us — to determine the cause of the damage to the Plaintiffs' homes."); *Heldt*, 196 Va. at 483-84 (discussing the jury's responsibility to determine liability).

149.    This Court should impanel a jury to determine just compensation, and the Putative Class Plaintiff and all class members should be awarded just compensation pursuant to 42 U.S.C. § 1983.

## COUNT THREE (state inverse condemnation against City)

150.    Putative Class Plaintiff incorporates the allegations in paragraphs 1 through 149 as if restated fully herein.

151.    For the reasons stated in support of Count Two, the City has breached its implied contract with Putative Class Plaintiff and class members by taking their valuable property right in Grandy House deliberately and supposedly for a public purpose without providing just compensation in violation of Article I, § 11 of the Constitution of Virginia and Va. Code § 8.01-187.

152.    The Court should impanel a jury to decide that the City has taken valuable negative easement rights without just compensation and damaged property not taken.  *See Livingston*, 284 Va. at 157; *Heldt*, 196 Va. at 483-84.

153.    This Court should impanel a jury to determine just compensation, and the Putative Class Plaintiff and the class members should be awarded just compensation pursuant to Va. Code § 8.01-187.

## COUNT IV (gross negligence claim against all Defendants)

154.     Putative Class Plaintiff incorporates the allegations in paragraphs 1 through 153 as if restated fully herein.

155.     Defendants acted with gross negligence in destroying the Grandy House.  The decisions of Mr. Fortner and Mr. Pishko set City policy with reckless disregard for the rights of others and reflect negligent training and gross negligence.

156.     Mr. Fortner acted with gross negligence by not giving Putative Class Plaintiff or class members any notice of an opportunity to appeal the finding that Grandy House should be demolished despite its clearly demonstrated interest therein or adequately training his staff to provide such notice.

157.     Mr. Fortner acted with gross negligence by ordering Grandy House be demolished when no emergency existed.  Mr. Pishko acted with gross negligence by denying an appeal of that administrative decision which constituted City policy.

158.     By failing to provide a meaningful opportunity to appeal the decision and/or destroying Grandy House without sufficient findings, Mr. Fortner and Mr. Pishko acted with conscious disregard for Putative Class Plaintiff's property rights and those of all class members.

159.     Sovereign immunity does not protect from suit for grossly negligent acts. *Cromartie v. Billings*, 298 Va. 284, 297 (2020).

160.     Punitive damages are appropriate where a defendant acts with such negligence as to evince a conscious disregard of the rights of others.  *Doe v. Isaacs*, 265 Va. 531, 536 (2003).

161.     The Court should empanel a jury to find Mr. Fortner and Mr. Pishko culpable for gross negligence and to determine the compensatory damages and punitive damages due to

Putative Class Plaintiff and all class members for the needless demolition of Grandy House and their property rights therein.

## PRAYER FOR RELIEF

WHEREFORE, the Putative Class Plaintiff Albert Roper, II Revocable Trust, by counsel, and on behalf of all others similarly situated, moves this Court to enter an order declaring the City's actions: (1) a violation of procedural due process; (2) a taking of private property pursuant to the Fifth Amendment of the United States Constitution; (3) a taking and damaging of private property pursuant to article I, § 11 of the Constitution of Virginia; (4) a deprivation of constitutional rights under the color of law in violation of 42 U.S.C. § 1983; (5) Defendants City of Norfolk,  Richard Fortner, and Bernard Pishko committed gross negligence; and further move this Court to: (6) certify this Putative Class of Plaintiffs to adjudicate liability; (7) empanel a jury pursuant to determine damages; and (8) reimburse the Putative Class Plaintiff and all members their costs incurred as a result of this action as well as their reasonable attorney's fees, as well as all other relief appropriate in the interests of justice.

**ALBERT ROPER II, REVOCABLE TRUST, ET ALS.**

        /s/   Joseph V. Sherman
        Joseph V. Sherman (Bar No. 86099)
        JOSEPH V. SHERMAN, P.C.
        324 West Freemason Street
        Norfolk, Virginia 23510
        (757) 350-8308
        (757) 351-4663 (fax)
        joe@lawfirmJVS.com